528 P.2d 961 (1974)
GRANITE STATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Albert L. DUNDAS and Kenneth N. Kripke, Defendants-Appellants.
No. 73-240.
Colorado Court of Appeals, Div. II.
September 24, 1974.
Rehearing Denied October 22, 1974.
Certiorari Denied December 23, 1974.
*962 Wood, Ris & Hames, Eugene S. Hames, Denver, for plaintiff-appellee.
Myrick & Newton, P.C., Robert O. Newton, Denver, for defendants-appellants.
Selected for Official Publication.
COYTE, Judge.
Granite State Insurance Company issued an automobile insurance policy to Albert L. Dundas who was involved in a multiple car accident involving six other motorists. Dundas and Granite State failed to agree on whether Dundas was entitled to an award under the uninsured motorist portion of the policy. This issue was submitted to arbitration as required by the contract and the arbitrator, Kenneth N. Kripke, who is made a party defendant herein, found that Dundas was entitled to recover under the uninsured motorist coverage. Subsequently, the parties were unable to agree as to the amount of damages, and the matter of damages was again submitted to arbitration. The arbitrator entered an award in favor of Dundas for $15,000 less $1,000 previously paid.
Dundas filed the award in district court as a judgment, and Granite State moved to set the judgment aside. Granite State also filed a separate suit against Dundas and Kripke asking that the court amend the arbitration award. The actions were consolidated, and, after trial, the court amended the award and entered a judgment of $9,000 in favor of Dundas and ordered that, as provided in the policy, a trust receipt, giving the insurance company subrogation rights to money recovered by Dundas from the uninsured motorist or any of the other tortfeasors, be signed by Dundas upon receipt of the judgment proceeds. Dundas appeals contending that the $14,000 award is binding on the company and that he is entitled to have execution on the judgment without having to execute a trust receipt. We disagree and affirm.
The policy was issued on December 4, 1969, and expressly set the limit of liability for uninsured motorist coverage at $10,000 each person, $20,000 each accident. Although Dundas agrees that the limit of uninsured motorist coverage was increased to $15,000 each person, $30,000 each accident, this increase was effective January 1, 1970 and, therefore, did not affect the coverage at the time of the accident which occurred December 24, 1969.
Dundas contends that the limits of coverage in effect at the time was $15,000/$30,000. This contention is based on an application of the Insurance Rating Board, of which Granite State is a member, to the Commissioner of Insurance dated September 22, 1969, and approved October 16, 1969, by the commission. The application proposed that the limits of uninsured motorist coverage be increased effective "on or after January 1, 1970." It is clear from the face of the contract and from the application of the Insurance Rating Board that coverage would be increased only after January 1, 1970. We agree with the conclusion of the trial court that the limits of the policy at the date of the accident were $10,000/$20,000.
During the trial, the deposition of the arbitrator was admitted into evidence. In that deposition the arbitrator testified that he had made a mistake as to limits of the coverage and assumed it to be $15,000 as that was the statutory limit in effect at the *963 time of the hearing and that the $14,000 award was based on this mistaken assumption. The trial court found that the extent of coverage had not been submitted for arbitration and that the arbitrator had made a gross mistake. Accordingly, it reduced the award to $9,000. Dundas appeals contending that the award of the arbitrator is final and not subject to review unless founded on fraud or bad faith.
The issue presented is whether the mistake is of sufficient magnitude to allow the court to modify the same. C.R.C.P. 109(g) provides that an arbitrator's award may be set aside on the grounds of mistake. Mistake in an arbitration award is one which is so gross as to evidence that the award did not actually represent the judgment of the arbitrator. Twin Lakes Reservoir & Canal Co. v. Rogers, 112 Colo. 155, 147 P.2d 828.
This is quite clearly the situation here. As found by the trial court and not denied by Dundas, the parties had stipulated that the coverage was $10,000. Hence, this award did not in fact represent [the arbitrator's] judgment upon the matters submitted, and thus, it constitutes a mistake which the trial court was authorized to correct. See Oregon-Washington R. & Nav. Co. v. Spokane, P. & S. Ry., 83 Or. 528, 163 P. 600; 6 C.J.S. Arbitration and Award § 105 c.
Dundas also contends that he should not be required to sign the trust receipt, which reads in part as follows:
"AND FURTHER: In consideration of such payment, the undersigned, for himself, agrees to take, through any representative designated by the Company, such action as may be necessary or appropriate to recover the damages suffered by the undersigned Albert L. Dundas from any person or persons, organization, association or corporation other than the Company who or which may be legally liable therefor, and to hold any moneys recovered from such person or persons, organization, association or corporation as a result of judgment or as a result of settlement, with or without litigation, in trust for the Company to be paid to the Company immediately upon recovery thereof; provided, however, that any sum recovered in excess of the amount paid to the undersigned by the Company as consideration for this Release and Trust Agreement shall be retained by the undersigned Albert L. Dundas for his own use and benefit."
Dundas claims such a trust agreement would lower his total recovery if he elects to proceed against an insured tortfeasor and is void as against public policy. We disagree. The insurance contract issued to Dundas by Granite State specifically required that Dundas sign a trust agreement upon receipt of any payment under the uninsured motorist coverage. The proposed trust agreement substantially conforms to the terms of the policy.
The effect of this agreement is to subrogate the insurance company to the rights which Dundas has against those persons responsible for his injuries, i. e., the uninsured motorist and other potential tortfeasors. Mills v. Farmers Insurance Exchange, 231 Cal.App.2d 124, 41 Cal.Rptr. 650; Remsen v. Midway Liquors, Inc., 30 Ill.App.2d 132, 174 N.E.2d 7.
The trust agreement is not contrary to public policy. The public policy was expressed in the legislative "declaration of purpose," 1965 Perm.Supp., C.R.S.1963, 72-12-20. That declaration does not prohibit the subrogation of an insurance carrier to the rights of an insured injured by an uninsured motorist. While we have found no Colorado authority on the right of an insurance carrier to be subrogated to the claims of a party covered by uninsured motorist insurance coverage, this right to subrogation is recognized in other jurisdictions. Remsen v. Midway, supra; Glidden v. Farmers Automobile Insurance Ass'n, 11 Ill.App.3d 81, 296 N.E.2d 84; See A. Widiss, Uninsured Motorist Coverage §§ 5.3, 5.4; Comment, Uninsured Motorist Insurance: California's Latest Answer to the Problem of the Financially Irresponsible Motorist, 48 Cal.L.Rev. 516.
*964 The insurance contract signed by Dundas was a valid contract providing for subrogation and was not against public policy. We affirm the trial court's order that Dundas be required to sign the trust agreement upon receipt of the $9,000.
Judgment affirmed.
SILVERSTEIN, C. J., and ENOCH, J., concur.