## No. C-1575

## Ohio Casualty Insurance Company v.
## Guaranty National Insurance Company, a Colorado corporation

(592 P.2d 397)

Decided March 19, 1979.

DeMoulin, Anderson, Campbell and Laugesen, Laird Campbell, Richard W. Laugesen, for petitioner.

Watson, Nathan & Bremer, P.C., J. Andrew Nathan, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *Guaranty National Ins. Co. v. Ohio Casualty Ins. Co.,* 40 Colo. App. 494, 580 P.2d 41 (1978). We reverse the court of appeals for the reasons stated in this opinion.

The Guaranty National Insurance Company (Guaranty) filed an action for declaratory judgment in the district court against the Ohio Casualty Insurance Company (Ohio) to interpret provisions of automobile liability insurance policies issued by the two companies. The extent of the financial responsibility of Guaranty and Ohio, as well as apportionment of liability under the terms of the Guaranty and Ohio policies, was the issue in the district court and again in the court of appeals. The district court, in a declaratory judgment, determined that Guaranty provided primary coverage and that Ohio was obligated for excess coverage. The court of appeals reversed the district court and held that the companies must apportion the damages on an equal basis.

All of the written documents which provide the foundation for this opinion were before the district court and the court of appeals and are now before us, and interpretation of those documents is a matter of law for this court, as it was for the district court and the court of appeals. *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 424 P.2d 380 (1967).

The facts which support a claim against both Guaranty and Ohio are the subject of a stipulation and are not controverted. All of the damage claims arose out of an automobile collision which occurred on January 3, 1975. Olive Jensen (Jensen) was driving a vehicle which belonged to G & J Specialties, d/b/a Budget Rent-a-Car. She was enroute from Grand Junction to Denver and was transporting the car on behalf of G & J Specialties as "other than a rentee," when she collided with an automobile driven by Christy Brost (Brost). She was killed in the collision, and several persons in the Brost automobile were injured. The property damage to the two vehicles involved in the collision was extensive.

■ Guaranty provided the liability and collision insurance on the automobiles owned by G & J Specialties which did business as Budget Rent-a-Car. Guaranty charged G & J Specialties 13% of the gross earnings of Budget Rent-a-Car as a premium for insuring the automobile rental business. Ohio insured an automobile owned by Jensen and her husband and received a premium of $69.13. Thus, Guaranty insured a commercial business, and Ohio insured the Jensens in the operation of an automobile.[1]

The Ohio automobile liability policy provided coverage for damages arising out of Jensen's operation of a non-owned automobile. The Ohio policy defines a non-owned automobile as an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative.[2]

The policy issued by Guaranty to G & J Specialties provided liability coverage both for G & J Specialties and for Jensen as the driver of the automobile. The Guaranty policy promised to pay:
". . . all sums which the insured shall become legally obligated to pay as damages because of
"A. Bodily injury or
"B. Property Damage
to which this insurance applies."
The policy issued by Ohio to Jensen provided similar coverage. Thus, the policies issued by both companies provided liability coverage for the collision which gave rise to this action.

[1] The commercial nature of Guaranty's policy with its high premium, as contrasted to the private policy issued by Ohio, may be considered in determining which policy is primary when policies overlap in provisions relating to coverage. *Federal Insurance Co. v. Prestemon,* 278 Minn. 218, 153 N.W.2d 429 (1967).

[2] The court of appeals was correct in holding that Ohio has not demonstrated that the "non-owned" section of the policy was not in force because Jensen was killed while operating an automobile on behalf of G & J Specialties. The court of appeals also was correct in its interpretation of *Travelers Indemnity Co. v. Barnes,* 191 Colo. 267, 552 P.2d 300 (1976), and properly determined that this case is not governed by Insurance Commission Regulation 74-20, which was declared to be invalid in the *Travelers* case. We conclude, as the court of appeals did, that the *Travelers Indemnity Co.* case is to be given retroactive application.

Both policies also contained clauses in which the companies attempted to limit their liability in the event a loss occurred at a time when their respective insureds had "other insurance" available to them in addition to their own policies.

Both the Ohio and the Guaranty policies contained provisions that seek to impose primary coverage on the other insurer and have provisions which attempt to limit their liability to the provision of excess coverage. The excess coverage provisions in the Guaranty policy provides:

"Such insurance as is afforded by this policy shall be excess insurance over any other insurance available to the insured, it being the intention of the parties that the insurance provided by this policy shall not be available to the insured until all other insurance, including excess insurance, shall have been used and exhausted to the full limits of such other insurance. The insurance under this policy is intended by the Named Insured and the Company to be supplementary only to all other insurance, and the insurance afforded by this policy shall not be collectible by the insured or other person until the policy limits of all other insurance, including excess insurance, shall have been paid and exhausted."

■ The Ohio policy contains a similar limitation on its liability. In the absence of countervailing policies, such clauses are given effect.[3] *Dairyland v. Drum,* 193 Colo. 519, 568 P.2d 459 (1977); *R. Keeton, Insurance Law,* West (1971) § 3.11(b); *J. Appleman, Insurance Law and Practice,* West (1972) § 3905. In construing the two automobile liability policies, the district court concluded that Ohio was only obligated to pay damages which exceeded the Guaranty policy limits (excess coverage).

Both parties agree that the excess insurance clause which appears in the liability insurance policy issued by Ohio to Jensen is a valid operating clause of that policy and should be given effect. Ohio contends, however, that the excess insurance clause in the policy issued by Guaranty to G & J Specialties does not apply to the automobile collision which gave rise to this action and thus is of no force in the present case. We agree.

The liability protection afforded by the Guaranty policy is provided in three sections: (1) Section A-125 provides "owner" coverage for G & J Specialties; (2) Section A-4396 provides coverage for renters of G & J's automobiles; (3) Guaranty's excess insurance clause appears in the third section entitled "Automobile Rental Endorsement," and is prefaced by the following language:

"7. Condition 6 of the policy and condition 5 of Coverage part A-4396 attached - OTHER INSURANCE - Coverages C, D, O, P, Q, R, S, and

---

[3] Our analysis of this case makes it unnecessary for us to address Ohio's contention that, under section 10-4-705, C.R.S. 1973, the insurer of the owner of an automobile is statutorily required to provide primary coverage when two insurance policies provide coverage for the same loss.

T is deleted [sic] from the policy and replaced by the following:"

Section A-125 has a subsection designated by the Roman numeral "VI," which provides, in pertinent part:

"VI. ADDITIONAL CONDITIONS

"A. Other insurance — Temporary Substitute and Newly Acquired Automobiles.

"With respect to a temporary substitute automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured.

"With respect to an owned automobile ownership of which is newly acquired by the named insured during the policy period and not described in the schedule, this insurance shall not apply if any other valid and collectible insurance is available to the named insured."

Section A-4396 has a subsection, designated by the Arabic numeral "6," which provides:

"6. No Benefits to Bailee.

"None of the provisions of this insurance shall inure directly or indirectly to the benefit of any carrier or other bailee for hire."

Guaranty contends that, even though the language which prefaces the excess insurance clause in the "Automobile Rental Endorsement" provides that the clause is to replace "conditions *6* of the policy," that preface should be construed so that the excess insurance clause replaces subsection *"VI"* of section A-125. If the excess insurance clause replaces subsection "VI" in section A-125, the "owner" coverage section, Guaranty would be able to take advantage of the clause in this action. If the clause replaced subsection "6" of section A-4396, the "renter" coverage section, it would not apply to the collision in question, since Jensen was concededly not a renter of the automobile she was driving. The court of appeals agreed, and it buttressed its conclusions with the following reasoning:

"[T]he language in the addendum is not as clear as defendant suggests. The fact that it was written in a dichotomous manner — referring first to 'policy' and second to 'part A-4396' — combined with the fact that the number '6 and 5' are out of sequence, leaves the phrasing ambiguous. Furthermore, replacing condition '6' of the rental section with an excess insurance clause is curious at best, since condition '6' deals with 'benefit to bailees.' Looking for help in that section of the policy dealing with 'owner' coverage, *see Smith v. Woodward,* 51 Colo. 311, 117 P. 140 (1911), we note that the provisions for 'other insurance' there fall under the heading: 'VI Additional Conditions.' In light of this, it is clear to us that, by the words 'conditions 6 of the policy,' the plaintiff and G & J Specialties meant to indicate the Roman Numeral 'VI,' and to apply the excess clause to the 'other insurance' portion of the 'owner' policy. *See Hutchison v. Elder,* 140 Colo. 379, 344 P.2d 1090 (1959). We conclude, therefore, that the excess clauses in both policies are applicable here." *Guaranty*

*National Ins. Co. v. Ohio Casualty Ins. Co., supra* at 45.

We have concluded that the court of appeals improperly construed the liability policy which Guaranty issued to G & J Specialties so as to include the excess insurance clause contained in the Automobile Rental Endorsement within the "owner" section of the policy (section A-125). It is reasonable and consonant with the likely intentions of Guaranty, which drafted the language which has created the alleged ambiguities in its policy, to give the language force as it is written. If the language in question is applied as written, the excess insurance clause would replace subsection "6" of section A-4396, the rental portion of the policy, and give the benefit of excess insurance coverage to the bailee who is renting a G & J automobile. "Ambiguities in a contract must be construed against the party who drafted the contract." *Perl-Mack v. Denver,* 194 Colo. 4, 568 P.2d 468 (1977). This interpretation of Guaranty's liability policy is reasonable and avoids any need to construe the policy in the manner chosen by the court of appeals.

Accordingly, since the district court's determination that Guaranty must provide primary and Ohio excess coverage for this accident was correct, we reverse the court of appeals and return the case to it with directions to reinstate the judgment of the district court.[4]

MR. JUSTICE CARRIGAN does not participate.

---

[4] Our decision obviates any need to determine what would be the proper method of apportioning the coverage between Guaranty and Ohio if the policy of each insurer had contained a valid excess insurance clause. *Cf., Dairyland v. Drum, supra; Ruan Transport Corp. v. Truck Rentals, Inc.,* 278 F. Supp. 692 (D. Colo. 1968).