Elizabeth A. KRAL, formerly known as Elizabeth A. Teller, Plaintiff–Appellant,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 86CA0427.

Colorado Court of Appeals, Div. I.

Nov. 12, 1987.

Rehearing Denied Dec. 24, 1987.

Certiorari Granted (Kral) May 16, 1988.

Cleveland, Wengler & Robbins, P.C., Daniel B. Stageman, Colorado Springs, for plaintiff-appellant.

White and Steele, P.C., R. Eric Peterson, Sandra L. Spencer, Denver, for defendant-appellee.

VAN CISE, Judge.

Plaintiff, Elizabeth A. Kral, formerly Elizabeth A. Teller, appeals a summary judgment entered in favor of defendant, American Hardware Mutual Insurance Company (American Hardware). We affirm.

Plaintiff's husband, Joseph Teller, was killed in August 1980 when his vehicle was struck by that of uninsured, intoxicated motorist, Norman A. Englebaugh. The Teller car was insured by an American Hardware policy which included uninsured motorist protection with a limit of $30,000. The policy provided, among other things:

"E. *OUR LIMIT OF LIABILITY*

"1. Regardless of the number of covered *autos, insureds,* claims made or vehicles involved in the *accident,* the most *we* will pay for all damages resulting from any one *accident* is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

"2. Any amount payable under this insurance shall be reduced by:

. . . .

"b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

. . . .

"F. *CHANGES IN CONDITIONS*

"The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

. . . .

"3. OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

"If *we* make any payment and the *insured* recovers from another party, the *insured* shall hold the proceeds in trust for *us* and pay *us* back the amounts *we* have paid." (emphasis in original.)

Plaintiff filed suit against Englebaugh in 1980 and subsequently discovered that Englebaugh was uninsured. She then filed a claim with American Hardware under the uninsured motorist coverage, and it paid plaintiff the policy limit of $30,000.

At the time the $30,000 payment was delivered to plaintiff, American Hardware, pursuant to its standard practice, requested that plaintiff sign a "release-trust agreement." Certain portions of the form agreement were excised by plaintiff and an addendum, drafted by plaintiff and her counsel, was attached.

The addendum states:

"Further, I state that I have instituted an action against Norman A. Englebaugh (the operator of the uninsured automobile) in the District court within the County of El Paso, State of Colorado, and I agree to withhold 15 percent of any monies received in such action as the result of settlement or judgment in trust for American Hardware Mutual, to be paid to said company immediately upon the same coming into my hands. I agree to be solely responsible for costs incurred in said action. In the event that an offer of settlement is reached from the adverse party, I agree to advise American Hardware Mutual before accepting the same."

Some time after plaintiff settled with American Hardware, she learned that there were additional parties against whom a cause of action could be maintained. In May 1981, plaintiff joined as a defendant Adam's Apple Lounge, Inc., the bar at which Englebaugh allegedly had become intoxicated, and, in July 1983, she joined Gary Windom and Don Bates Insurance Agency, insurance agents for Adam's Apple Lounge, as additional defendants.

In April 1985, counsel for plaintiff advised American Hardware that a settlement offer had been made by Windom and Bates. Plaintiff ultimately settled for $177,500 in exchange for dismissal of the claims against Adam's Apple Lounge, Win-

dom, and Bates from the Englebaugh case. American Hardware requested reimbursement of $26,625 (15% of $177,500) under the policy and the release-trust agreement. Plaintiff refused and filed a complaint for declaratory judgment. American Hardware filed a counterclaim requesting judgment against plaintiff.

Both parties moved for summary judgment. The trial court granted American Hardware's motion and denied plaintiff's. The court ruled that neither the subrogation clause contained in the American Hardware policy nor the release-trust agreement executed by plaintiff is contrary to public policy. It further ruled that the terms of the release-trust agreement were intended to include sums received from any party to the lawsuit, and not only from Englebaugh, the operator of the uninsured automobile. It therefore concluded that American Hardware was entitled to recoup from plaintiff $26,625 of the $30,000 paid by it under the uninsured motorist clause of the policy.

## I.

■ Plaintiff contends the subrogation clause and release-trust agreement are void as against public policy. We disagree.

The uninsured motorist statute in effect at the times pertinent here, Colo. Sess. Laws 1979, ch. 69, § 10–4–609, at 377, contains no express right to subrogation or statement of public policy. *Cf.* § 10–4–609(5), C.R.S. (1986 Cum.Supp.). However, this court held in *Granite State Insurance Co. v. Dundas*, 34 Colo.App. 382, 528 P.2d 961 (1974), that an insurer under uninsured motorist coverage can be subrogated to the rights which the insured has against those persons responsible for his injuries, *i.e.*, the uninsured motorist and other tortfeasors, and that a trust agreement similar to the one in the instant case is not contrary to public policy.

Plaintiff urges us either to overrule *Granite State* or to narrow its holding to prohibit subrogation whereby an insured is required to repay uninsured motorist benefits previously received out of any recovery from a responsible party. We decline to do so, and regard *Granite State* as dispositive of this issue.

The cases relied on by plaintiff in support of her contention, *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984), *Marquez v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980), and *Newton v. Nationwide Mutual Fire Insurance Co.*, 197 Colo. 462, 594 P.2d 1042 (1979), all concern attempts to dilute, condition, or limit statutorily mandated insurance coverage.

However, *Granite State* and the instant case concern an award under the uninsured motorist coverage only. This coverage, under § 10–4–319, C.R.S. as to *Granite State* and § 10–4–609, C.R.S. (as enacted in 1979) as to the instant case, is optional and not mandatory coverage. Although this coverage, if accepted, must be provided in a specified amount, this provision in the statute does not prohibit subrogation from sources other than the insurer. Therefore, we conclude that there is no prohibition or public policy against subrogation or release-trust agreements under uninsured motorist coverage.

## II.

■ Plaintiff also contends that the release-trust agreement does not concern money recovered in the settlement received by plaintiff from the other tortfeasors. We do not agree.

In case of doubt, uncertainty, or ambiguity, an agreement will be most strictly construed against the party who drafted it. *Green Shoe Manufacturing Co. v. Farber*, 712 P.2d 1014 (Colo.1986).

The addendum to the release-trust agreement, drafted by plaintiff and her counsel, provides that plaintiff will "withhold 15 percent of any monies received [in her "action against Norman A. Englebaugh"] as the result of settlement or judgment" in trust for and to be paid to American Hardware. It also provides that: "In the event that an offer of settlement is received from the adverse party, [plaintiff agrees] to advise American Hardware Mutual before accepting the same."

We construe the words "action against Norman A. Englebaugh" and "the adverse

party" to be denominative of the action in which plaintiff was seeking compensatory damages and not words of limitation. Reading the release-trust agreement together with the subrogation clause in the policy, we agree with the trial court that the intent of the parties to the agreement was to include recovery from any person or entity found liable for plaintiff's damages. When plaintiff joined defendants Windom, Bates, and Adam's Apple Lounge, Inc., as parties defendant in her action against Englebaugh, any settlement received from these defendants fell within the subrogation clause of the policy and the release-trust agreement.

### III.

We find no merit in plaintiff's contention that the release-trust agreement is unenforceable for lack of consideration.

Judgment affirmed.

PIERCE and BABCOCK, JJ., concur.