**TRAVELERS INDEMNITY COMPANY,**
Plaintiff–Appellee,

v.

**HOWARD ELECTRIC COMPANY; Howard Mechanical Company; Cross–Tec Co.; TJK Co.; Howard Companies; Howard Electrical and Mechanical Company; C.I.C., Inc.; C.I.C., Inc. & Brown–Olds Corporation, a Joint Venture; TJ & K Electric; H.E.M.C.O. Electrical & Mechanical Co.; Howard–Chamblee–McAfee, a Joint Venture; Howard–Chamblee–McAfee; Howard–Belco, a Joint Venture; Howard–Diversified, a Joint Venture; Howard Electric Company & Howard Mechanical Company, a Joint Venture; Howard Electric Company Employees Profit Sharing Plan; Jack Howard; Robert Kohnen; Howard Electric and Mechanical Co., Inc.; Howard Systems, Inc.; Howard–Wholt, a Joint Venture; Herdman–Howard, a Joint Venture; Friedlander–Howard, a Joint Venture; Howard Electrical & Mechanical of Arizona, Inc.; EMCM, Inc.; REK, Inc., a/k/a REK Enterprises, Inc.; Howard Electrical & Mechanical, Inc.; H.E.M.C.O.–W.R. Roberts, a Joint Venture; and Howard Builders and Designers, Inc., Defendants–Appellants and Cross–Appellees,**

and

**Shaffer/Edson Electric Supply Co., a/k/a Shaffer Electric Supply Co. and Edson Lighting Co., a/k/a Edson Distributing Co., Inc., Defendant–Appellee and Cross–Appellant.**

No. 92CA1155.

Colorado Court of Appeals,
Div. II.

Feb. 10, 1994.

Rehearing Denied March 17, 1994.

Certiorari Denied Sept. 12, 1994.

Weller Friedrich, LLC, Jerome M. Joseph, Gregory E. Sopkin, Denver, for plaintiff-appellee.

Wolf & Slatkin, P.C., Albert B. Wolf, Jean C. Arnold, Jonathan L. Madison, Denver, for defendants-appellants and cross-appellees.

Grimshaw & Harring, Richard L. Harring, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge NEY.

Defendants, Howard Electric Company, and various of its officers, related companies, and joint ventures (Howard), appeal the judgment of the trial court entered in favor of plaintiff, Travelers Indemnity Company (Travelers), and in favor of defendant, Shaffer/Edson Electric Supply Co. (Shaffer), on its cross-claim for indemnity against Howard. We reverse and remand for a new trial.

This action arose from a dispute concerning retrospective insurance premiums assessed by Travelers for coverage provided to Howard and Shaffer under their automobile liability, general liability, and workers' compensation policies.

Under a retrospective insurance plan, premiums are based upon an insured's loss experience under the policies to which the plan applies. Thus, the actual annual premium is calculated after covered losses occurring during the completed year are known. Furthermore, because an insured under the plan is required to pay an estimated premium during the course of the coverage year, an adjustment is made at year's end based upon actual loss experience. Consequently, an insured may then be assessed an additional premium amount or, in case of overpayment, issued a refund.

Here, the major portion of the retrospective premium assessments sought by Travelers relates to one occurrence, a traffic accident in which a child was injured in a fall from a vehicle owned by Shaffer. At the time of this accident, Shaffer was one of the companies which comprised the Howard organization and was a named insured on the policies issued by Travelers to Howard.

In the subsequent personal injury action on behalf of the child, Travelers defended its insureds, settling the claim in an amount equal to the primary policy coverage limit of $300,000. Thereafter, Howard and Shaffer refused to pay retrospective premiums that were in excess of a $50,000 loss limitation included in their coverage. At issue, principally, are the inclusion by Travelers in the premium calculation of expenses incurred in defending the personal injury claim and the extent to which the loss limitation applies.

I.

■ As a threshold matter, we reject plaintiff's contention that the stipulated confession of personal liability by named insureds Jack Howard and Robert Kohnen precludes their right to appeal the judgment of the trial court.

The named insured companies and individuals that comprise the Howard organization, among them Jack Howard and Robert Kohnen, have not denied liability for payment of retrospective insurance premiums. Rather, it is the calculation of the premiums that is at issue here, and the stipulation relied upon by Travelers does not support a conclusion that these individuals have waived their right to appeal what they contend is a calculation, and resultant award, based upon error.

II.

■ Howard first asserts that the trial court misapplied the parol evidence rule in

refusing to allow the admission of certain evidence to support the contention of Howard that the contract was ambiguous and did not comprise an integrated agreement between the parties. We agree.

The trial court's order does not reflect an explicit determination that the insurance agreement between the parties is unambiguous or is integrated as the final and complete expression of the agreement. *See Restatement (Second) of Contracts* § 209 (1979). However, implicit in its refusal to admit parol evidence during trial and in its analysis of the contract as interpreted by Travelers is a finding by the trial court that the terms of the contract were not ambiguous. Nevertheless, the interpretation of insurance documents, as any other written contract, is a matter of law, and we are not bound by the interpretative findings of the trial court. *Eisenhower Hospital Osteopathic v. Taylor,* 43 Colo.App. 498, 609 P.2d 1114 (1980).

### A.

Central to the issue here is the meaning of the contract term "allocated loss adjustment expenses." This term is undefined in the insurance contract and, thus, on its face represents a potentially unlimited adjustment. Even so, a term is not ambiguous merely because it is undefined within the policy if its meaning can be ascertained by looking at the definitions generally accepted by the courts, the industry, and authoritative secondary sources. *See Heller v. Fire Insurance Exchange,* 800 P.2d 1006 (Colo.1990).

Travelers maintains that "allocated loss adjustment expenses" is a term well-defined within the construction and insurance industry to include attorney fees and costs incurred in defending claims against insureds. Travelers further points out that Howard is a multi-million dollar construction enterprise that has purchased complex insurance coverage for many years.

There is no indication in the record that Howard possesses any expertise in the field of insurance. Rather, it relied upon the Talbert Corporation, an established insurance broker, to provide the necessary information and to negotiate and secure its coverage. However, any imputation of Talbert's role on behalf of Howard is weakened by the contractual relationship which existed between Talbert and Travelers, and such contract precludes characterization of Talbert exclusively as the agent of Howard. The trial court found, and we agree, that Talbert owed duties to both Howard and Travelers. Thus, its expertise cannot summarily be assumed to accrue to the sole benefit of Howard.

Additionally, the record does not support a conclusion that Howard's position in the construction industry provided it with adequate knowledge of the scope and meaning of this term. Hence, the question of ambiguity should be considered in view of the insured's knowledge and understanding as a reasonable lay person and from such a person's normal expectation of the extent of coverage of the policy. *Steven v. Fidelity & Casualty Co.,* 58 Cal.2d 862, 27 Cal.Rptr. 172, 377 P.2d 284 (1964).

Moreover, "[p]ublic policy favors protecting consumers by requiring those who sell insurance to disclose fully and fairly to the purchasing public what insurance protection is actually being provided for the premium charged." *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 468, 594 P.2d 1042, 1045 (1979). In our view, a corollary of this policy is that an insurance company has an obligation to write the critical portions of its policies in plain English and with such precision that a reasonable lay person can, by reading the policy, understand the coverage provided. *See Travelers Insurance Co. v. Jeffries–Eaves Inc.,* 166 Colo. 220, 442 P.2d 822 (1968) (for clause to have certain effects, insurance company must so state in clear unambiguous language).

If the terms of an agreement are ambiguous or are used in some special or technical sense not apparent from the contractual document itself, then a court may look beyond the four corners of the agreement in order to determine the meaning intended by the parties. And, when an ambiguity is found to exist and cannot be resolved by reference to other contractual provisions, extrinsic evidence must be considered to de-

termine the mutual intent of the parties at the time of contracting. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

We conclude that here the insurance industry term "allocated loss adjustment expense" without further definition is ambiguous and that this ambiguity warrants the admission of extrinsic evidence to ascertain the understanding of the parties to the agreement.

■ In addition, we note that Howard's apparent past payment of allocated loss adjustment expenses which included attorney fees and costs, if such occurred, is an insufficient basis upon which to determine its understanding of the term. The record indicates that such expenses, if included in Howard's retrospective premium calculations in the past, were not delineated as such. Therefore, Howard had no notice that attorney fees and costs were included, and, as none exceeded the $50,000 per occurrence limitation, the expenses were unchallenged.

### B.

■ Of further concern is whether a "combination loss limitation," which would preclude the inclusion of attorney fees and costs in the retrospective premium calculation, was in force under the policies. Travelers maintains that the loss limitation applied only to workers' compensation coverage purchased by Howard. Howard argues that its loss limitation applied to the liability policies as well.

While the premium endorsement indicates that no combined loss limitation applied, this document was not delivered to Howard until several months after the negotiations and purchase of coverage had taken place, and an offer of proof that Howard had requested, paid for, and believed it had acquired the combined loss limitation in question was rejected as parol evidence.

Under these circumstances, we conclude that the trial court erred in its refusal conditionally to admit parol evidence in order to determine the issue of ambiguity concerning the extent of Howard's loss limitation. *See Pepcol Manufacturing Co. v. Denver Union Corp., supra.*

### III.

### A.

Among the issues that may arise on retrial is Howard's assertion that the trial court failed to address its allegation that Travelers acted in bad faith by settling the injury claim at the limit of the primary policy when Howard had purchased an additional $10 million umbrella policy from Travelers. Howard thereby questions the actions of Travelers which accrued to its sole benefit and against Howard when it refused to settle for an amount which would have activated the umbrella coverage that included attorney fees and costs.

■ Travelers retained the absolute right to control the defense of this action brought against its insureds. *See Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo. 1984). And, one alleging bad faith against an insurer must "prove the absence of a reasonable basis" for the insurer's conduct. *Pierce v. Capitol Life Insurance Co.,* 806 P.2d 388, 390 (Colo.App.1990).

We conclude that this claim requires a resolution based upon appropriate findings of fact by the trial court.

### B.

The calculation of the retrospective insurance premium reflects inclusion of the attorney fees and costs incurred in defending the personal injury claim.

The trial court found that:

[Travelers] incurred $90,796 in allocated loss adjustment expenses (consisting of legal fees of Teilborg, Sanders and Parks and the Law Offices of Christopher Hossack; [expert witness fees, court reporter's fees]; and miscellaneous expenses).

■ This finding of fact is insufficient to resolve several issues raised upon appeal. First, the trial court's finding reflects no consideration of the basis upon which it determined that the Hossack firm, which the record denotes as in-house counsel for Travelers, was entitled to attorney fees. Second, there is no indication that the trial court

determined that costs were actual, reasonable, and necessary. *See Waterman v. Sullivan*, 156 Colo. 195, 397 P.2d 739 (1964). And, third, the appearance of a possible conflict of interest presented here when the claim was settled in a manner which avoided coverage provided by Howard's umbrella policy and thus benefitted Hossack's employer Travelers to the detriment of his client Howard is not addressed.

Therefore, should the trial court conclude on retrial that these fees and costs are properly included, additional findings will be necessary.

## C.

We conclude that the findings of the trial court are insufficient to allow an analysis of the basis upon which the trial court awarded damages in addition to those stemming from the personal injury claim.

Because the determination at retrial of the coverage actually provided to Howard and the resolution of Howard's claim of bad faith will affect ultimate liability, further consideration of the award by this court is premature.

## IV.

Finally, as we have been advised by counsel at oral argument that all matters of conflict between Howard and Shaffer have been resolved, we need not address them.

The judgment is reversed, and the cause is remanded for a new trial consistent with this opinion.

METZGER and JONES, JJ., concur.